

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

**ENTERED**
**07/20/2007**

|  |  |  |
|---|---|---|
| IN RE | ) | |
| | ) | |
| GRAMERCY COURT, LTD. | ) | CASE NO. 07-80177-G3-11 |
| 2600 PARK LIVING, LTD., | ) | CASE NO. 07-80178-G3-11 |
| | ) | |
| Debtors | ) | Jointly Administered Under |
| | ) | Case No. 07-80177-G3-11 |
| | ) | |

MEMORANDUM OPINION

The court heard the "Motion of Compass Financial Partners LLC for an Order, Pursuant to Section 362(D) of the Bankruptcy Code, Modifying the Automatic Stay" [sic] (Docket No. 59). The court considered the motion and the Objections filed thereto by Mountain West Mortgage, LLC (Docket No. 92) and by Debtors, Gramercy Court, Ltd ("Gramercy Court") and 2600 Park Living, Ltd ("2600 Park Living") (Docket No. 103), the pleadings, evidence, entire file, and arguments of counsel. The court makes the following Findings of Fact and Conclusions of Law, and will enter a separate Judgment wherein the automatic stay will not lift, provided Debtors comply with the adequate protection requirements specified below. To the extent any of the Findings of Fact herein are construed to be Conclusions of Law, they are hereby adopted as such. To the extent any of the Conclusions of Law herein are construed to be Findings of Fact, they are hereby adopted as such.

Findings of Fact

1.   On April 3, 2007, Gramercy Court, Ltd ("Gramercy Court") and 2600 Park Living, Ltd. ("2600 Park Living"), collectively referred to as "Debtors", filed separate voluntary bankruptcy petitions under Chapter 11.  Docket Nos. 1 in Case Nos. 07-80177-H3-11 and 07-80178-H3-11.  On April 10, 2007 the court ordered that these cases be jointly administered under Case No. 07-80177-H3-11.  Case No. 07-80177-H3-11, Docket No. 9; Case No. 07-80178-H3-11, Docket no 12.

2.   On August 14, 2000, Gramercy Court was formed for the purpose of constructing, owning, and managing a condominium complex located at 2600 and 2601 Gramercy Park, Harris County, Houston, Texas (the "Property") which was to be comprised of two five-story 224 unit condominium buildings.  Testimony of Tracy Suttles.  On June 25, 2004, Gramercy Court entered into a Construction Loan Agreement with a group of lenders ("Lenders"), whereby Gramercy Court borrowed $10,462,500.00 from the Lenders to begin construction.  Compass Exhibit No. 8.

3.   The loan is evidenced by a promissory note in favor of the Lenders and secured by a Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing, both of which are dated June 25, 2004.  The promissory note provided for payments in the amount of the monthly interest on the note amount (with interest accruing at 12% per annum) due on the first of each month, in arrears.  The

-2-

Deed of Trust grants the Lenders a security interest in the Property and all improvements thereon, as well as all personal property, and rents and profits, among other things.  Compass Exhibit Nos. 9 and 10.  The loan originally matured on December 14, 2005, but the maturity date was extended to June 30, 2006.  Compass Exhibit No. 16.  The promissory note and loan agreement permitted additional draws by Gramercy and over time the loan increased to $34,384,500.00.  Compass Exhibit Nos. 17 and 18.  The loans were personally guaranteed by Tracy Suttles.  Compass Exhibit No. 13, Testimony of Tracy Suttles.

4.   USA Commercial Mortgage Company ("USA Commercial"), a mortgage broker and loan servicer in Nevada, and certain of its affiliates, were Lenders.  In addition, USA Commercial was the agent for the Lenders.  There are approximately 332 separate lenders included in the group.  The Lenders include various entities (for example, limited liability companies, family trusts, and pension trusts) as well as single and married individuals. Pursuant to Loan Servicing Agreements with USA Commercial, the Lenders provided USA Commercial with different monetary amounts, which were to be used for making loans to various borrowers.  The amounts that each lender provided pursuant to the agreements are predominately in the range of $50,000 to $100,000.  Compass Exhibit Nos. 8 and 17.

5.   Around the time of the execution of the Construction Loan Agreement, June 24, 2004, Gramercy executed a promissory note in the amount of $1,700,000.00, secured by a Deed of Trust on the Property in favor of Mountain West Mortgage, LLC.  An issue exists between Compass and Mountain West regarding the extent and priority of their respective liens and security interests in the Property.

6.   Sometime in March 2006, USA Commercial stopped funding to Gramercy Court on the construction project.  At this time, Gramercy Court had negotiated contracts to sell most of the 220 condominium units.  The Lenders, acting through their agent, USA Commercial, refused to partially release their liens on the individual condominium units as they were sold.  Gramercy Court had only obtained partial releases for four of the units.  Testimony of Tracy Suttles.

7.   On April 13, 2006, USA Commercial filed a voluntary chapter 11 bankruptcy petition in the United States Bankruptcy Court, District of Nevada.   Case No. 06-10725-lbr.   During bankruptcy, USA Commercial, and its affiliates, sold their interests in the Construction Loan Agreement to Compass Partners LLC, an affiliate of Compass Financial Partners, LLC (the movant), pursuant to an Asset Purchase Agreement, dated December 8, 2006. Compass Exhibit No. 6.  Through assignments and assumptions (of the Asset Purchase Agreement) between other Compass affiliates, Compass Financial Partners, LLC ("Compass") was assigned the rights to

service the Gramercy loan and a 13.8% beneficial interest in such loan. Compass Exhibit Nos. 19, 21, and 22.

8. Gramercy Court was unable to close with its potential buyers on the contracts for sale of the condominium units, as the lenders for the condominium unit buyers could not obtain a first priority mortgage without a partial release of the lien from Gramercy Court's Lenders. The Lenders did not provide the partial releases. As a result, Gramercy Court decided to operate the Property as an apartment complex. Testimony of Tracy Suttles. In October 2006, Gramercy Court transferred the Property and all of its liabilities to 2600 Park Living, which was created to own and manage the Property as an apartment complex. Gramercy Court and 2600 Park Living are wholly owned by Tracy Suttles. Currently, Gramercy Court is essentially a non-operating entity and the Property is the sole asset of 2600 Park Living. Testimony of Tracy Suttles.

9. The court authorized Debtors to use the cash collateral of Compass pursuant to an agreement. The Final Cash Collateral Agreement expired on June 30, 2007. Docket Nos. 13 and 29. Compass filed its Motion (Docket No. 59) seeking relief from the automatic stay to enforce its rights under the Construction Loan Agreement. Compass alleges that its claim is approximately $52,000,000.00. Compass' motion to lift the stay is based on cause as Compass alleges it lacks adequate protection. Compass also

contends that the automatic stay should lift because Debtors have no equity in the Property and the Property is not necessary to an effective reorganization.

10.  Debtors oppose the motion, and assert that they have equity in the Property and that the Property is necessary to an effective reorganization.  Debtors also contend that it is unclear whether Compass has the authority to continue to service the Gramercy loan or file a claim on behalf of all the Lenders.

11.  The uncertainty of Compass' standing is based upon the fact that the evidence in this case does not include Loan Servicing Agreements for at least 100 of the 332 entities that comprise the Lenders, and upon allegations in a complaint for declaratory relief pending in federal district court in Nevada. The declaratory complaint was filed against Compass by a group of lenders or investors who allegedly represent at least 51% of the interestholders in loans formerly serviced by USA Commercial.  One of the allegations in the declaratory complaint is that Compass has no authority to act on behalf of the Lenders, in connection with various loans, as the "power of attorney" included in the Loan Servicing Agreements has expired.  While Compass may not have 100 percent of the authority to represent various lenders, it does have the authority to represent some of them, and also has a 13.8% beneficial interest.  Accordingly, Compass is a party in interest.

12.   Debtors assert that Compass' claim is only in the approximate amount of $25,000,000.00. Debtors allege that Compass inflated its claim and that Debtors have a claim for setoff and/or recoupment.   Debtors contend they have a right to setoff, as Debtors sustained damages from the Lenders' failure to fund the construction project and the Lenders' failure to partially release its lien on the Property.   Debtors have filed an Objection to Compass' Proof of Claim.   Docket No. 101.

13.   Mountain West also opposes Compass' motion. Compass, in its Motion for Relief, states that Mountain West's lien is subordinate to Compass' lien.  Mountain West contends that any issues regarding the extent or priority of liens must be raised in an adversary proceeding and are not the subject of a motion for relief from stay.

14. Boris Piskun, Manager of Compass, testified that the outstanding balance on the loan is approximately $52 million, of which approximately $34 million is principal and $4.8 million is accrued interest.  The remaining amounts claimed by Compass consist of default interest in the approximate amount of $3.8 million, late fees in the approximate amount of $2.2 million, an extension fee in the approximate amount of $524,000, and exit fees in the approximate amount of $4.9 million.  Compass Exhibit No. 3.  Piskun also testified that the last payment received from Gramercy Court was in June, 2006.  However, the payment history reflects that an

–7–

interest payment was made on August 3, 2006.  Debtors Exhibit No. 3.

15.  Thomas Wilkenson, IV, testified on behalf of Compass in connection with the Property's value.  Wilkenson is the Vice President of KET Enterprises Incorporated and is a licensed real estate broker whose primary business is the marketing and sale of multi-family projects.  Wilkenson testified that, in his opinion, the property's value as of October 19, 2006 was $34,430,000.00.  Compass Exhibit No. 5, "Brokers Opinion of Value."  He valued the property as a rental project and also as a sales project.  He physically viewed the exterior of the Property in October 2006 and said he revisited the location "three or four months ago."  (This would be sometime between March and June, 2007.)  Wilkenson testified that he did not view or inspect the interiors of any units and did not have access to any of the rent rolls.

16.  The Property is valued in the Debtors' schedules at approximately $50 million.  Docket No. 17.  Debtors had the Property appraised by Jack Bass, a certified real estate appraiser and a member of the Appraisal Institute (MAI).  Bass prepared and certified a Market Value Appraisal utilizing three approaches: cost value, sales value, and income capitalization.  The Property is considered Class A and is located in the Braeswood/Bellaire area of Houston.  Bass inspected the exterior as well as the interior of the Property, including the common areas and the differing units

-8-

and floorplans. Bass testified that the property was worth $46,205,000 as of April 12, 2007. He also opined that the prospective market value of the Property, as of December 1, 2007, would be $49,300,000. The prospective value represents the value of the Property upon completion of construction and with a stabilized occupancy. Debtors Exhibit No. 1.

17. 2600 Park Living opened one of the two buildings, Unit One, comprising the Apartment Property and began leasing in December 2006. Unit One is between 95% - 100% complete and as of April 12, 2007, it had an occupancy rate of 51%. The other building, Unit Two, is approximately 80% - 90% complete, with an estimated completion date within approximately nine months. Testimony of Tracy Suttles and Jack Bass; Debtors Exhibit No. 1.

18. The amount of principal and interest owed by Debtors on the Loan is approximately $39 million. In addition to this amount, Compass claims it is owed an additional amount of almost $11.5 million, based upon the terms of its Loan. These additional amounts are subject to dispute. Even should the additional amounts be determined to be owed, Compass' claim may be subject to setoff and recoupment. The court finds the value of the Property to be $45 million, taking into account the testimony of Wilkenson and Bass. The court believes the higher value to be the most accurate, but takes into account the fact that the project is now a "fractured condo."

19.   To meet its burden of proof on the issue of lack of equity, Compass must show that the collateral is worth less than the amount of the debt encumbering the property.  The court finds that Compass has not met its burden of proof, as it is not certain that the amount owed on the Loan will exceed $39 million.  Further, even if Compass proved lack of equity, Debtors can avoid relief from the stay if adequate protection is provided and Debtors can demonstrate that the property is necessary for an effective reorganization.

20.   Debtors have filed their Disclosure Statement and Plan of Reorganization.  Docket Nos. 69 and 70.  The proposed plan provides that the existing debt obligations are to be restructured through the acquisition of new financing for the Property.  Debtors anticipate obtaining exit financing on the effective date of the plan in the amount of $31,000,000.00 from a lender to be identified by Debtors at or prior to the hearing on the Debtors' Disclosure Statement.  The Disclosure Statement is currently scheduled for hearing on August 8, 2007.  Docket No. 71.

21.  Debtors assert that the exit financing will provide the liquidity they need to continue to operate the  Property.  2600 Park Living will be the sole remaining entity, and will possess all assets and liabilities formerly held by Gramercy Court.  The plan provides for 100% estimated recovery on all claims, including the claim of Compass, albeit Compass' claim is listed as $25,000,000.00

-10-

in the Disclosure Statement.  This figure was arrived at by Debtors' application of its claimed setoff and/or recoupment amount.  Docket Nos. 69 and 70.

22.  The monthly operating report for April 2007 reflects net income of $397.47.  Docket No. 38.  The monthly operating report for May 2007 reflects that Debtors are operating at a net loss of approximately $13,004.87 per month.  Docket No. 90. Suttles testified that he was willing to put up his personal funds for a cash infusion for Debtors to continue to operate until Debtors could obtain financing or investors.  Suttles testified that he could provide $13,000 per month to cover the Debtors' expenses and that he would be able to continue to provide this monthly sum for over one year.

23.  Debtors' Disclosure Statement provides that the lender which is to provide the exit financing is to be identified by Debtors at or prior to August 8, 2007, the hearing on the Debtors' Disclosure Statement.  Taking into consideration the short time period within which Debtors intend to have a financing commitment as well as what is just to the claimants, the Debtors, and the estates, the court finds that the stay should not lift at the present time.

24.  The court finds that if Debtors obtain exit financing, there is a reasonable possibility that the Debtors' proposed plan will result in a successful reorganization within a

reasonable time.  The court finds that the Property at issue is necessary to that reorganization.

25.  To assure that Compass is adequately protected, Debtors must maintain adequate insurance on the Property and make monthly payments of $34,000, to begin August 20, 2007.

Conclusions of Law

1.  Under Section 362(d)(1) the court may terminate, annul, modify, or condition the automatic stay for cause.  11 U.S.C. § 362.  Every party seeking relief from the automatic stay under section 362(d)(1) must carry the initial burden of showing that it is entitled to relief before the debtor is obligated to go forward with its proof.  *Sonnax Industries, Inc. v. Tri Component Products Corp. (In re Sonnax Industries, Inc.)*, 907 F.2d 1280, 1285 (2d Cir. 1990); *In re Keene Corp.*, 171 B.R. 180, 182 (Bankr.S.D.N.Y. 1994).

2.  The term "cause" used in 11 U.S.C. § 362(d)(1) is not defined in the Code and whether cause exists must be determined on a case by case basis.  *See In re Little Creek Dev. Co.*, 779 F.2d 1068 (5th Cir. 1986); *In re Robbins*, 964 F. 2d 342 (4th Cir. 1992); *In re Laguna Assoc. Ltd. Partnership*, 30 F.3d 734 (6th Cir. 1994); *In re Tucson Estates, Inc.*, 912 F.2d 1162 (9th Cir. 1990).

3.  Section 362(d)(2) provides that the court may terminate, annul, modify, or condition the automatic stay if: (1) the debtor does not have equity in the property; and (2) the

-12-

property is not necessary to an effective reorganization.  Both elements must be met.  When a creditor seeks relief from stay in order to foreclose on property, the creditor has the burden of establishing the Debtor's lack of equity in the property.  The party opposing relief has the burden of proof on all other issues. 11 U.S.C. § 362(g).

4.   The creditor who alleges a lack of equity has to prove that the collateral is worth less than the amount of the debt encumbering the property.  Although the creditor proves lack of equity, the debtor can avoid relief from the stay if debtor proves that the property is necessary for an effective reorganization.

5. In a chapter 11 reorganization case, most of the property of the debtor in possession is likely to be "necessary" for the debtor's business and ultimate reorganization.  The property must be necessary for an "effective" reorganization.  This means there "must be a reasonable possibility of a successful reorganization within a reasonable time," and that the property at issue is necessary to that reorganization.  See 3 Collier on Bankruptcy, ¶ 362.07[4](Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.); *United Sav. Ass'n v. Timbers of Inwood Forest Assocs. Ltd.*,  484 U.S. 365, 375-76 (1987).

6.  The power to modify or vacate the automatic stay is exercised by a bankruptcy court according to the particular circumstances of the case and is to be guided by considerations

-13-

that under the law make for ascertainment of what is just to the claimants, the Debtor, and the estate. *Foust v. Munson Steamship Lines,* 299 U.S. 77 (1936); *In re Towner Petroleum Co.*, 48 B.R. 182 (Bankr. Okl.1985); *In re Mego Inter., Inc.*, 28 B. R. 324 (Bankr. S.D.N.Y. 1983). Courts are to exercise "judgment which must weigh competing interests and maintain an even balance." *Landis v. North American Company*, 299 U.S. 248 (1936).

7. The Bankruptcy Code gives the court broad discretion to provide appropriate relief from the automatic stay as may fit the facts of a particular case. *In re Atlantic Ambulance Associate, Inc.*, 166 B.R. 613 (Bankr. E.D.Va. 1994).

Based on the foregoing, the court will enter a separate Judgment wherein the automatic stay will not lift, provided Debtors comply with the adequate protection requirements specified herein.

SIGNED at Houston, Texas on this 19th day of July, 2007.

_____
LETITIA Z. CLARK
UNITED STATES BANKRUPTCY JUDGE

-14-